UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT WILLIAMSON,

                            Plaintiff,

                                                  DECISION AND ORDER

                                                  15-CV-6324L

              v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                            Defendant.
_____

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final determination.

On April 24, 2012, plaintiff, then fifty-three years old and having a consistent work history up until the time of his alleged disability onset, filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging an inability to work since November 1, 2011. (Administrative Transcript, hereafter "Tr.," at 41). His application was initially denied. Plaintiff requested a hearing, which was held on May October 21, 2013 before Administrative Law Judge ("ALJ") John P. Costello. The ALJ issued a decision on January 22, 2014, concluding that plaintiff was not disabled under the Social Security Act. (Tr. At 41-48). That decision became the final decision of the Commissioner

when the Appeals Council denied review on April 16, 2015. (Tr. at 1-4). Plaintiff now appeals from that decision. The plaintiff has moved (Dkt. #9), and the Commissioner has cross moved (Dkt. #12) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act requires a five-step sequential evaluation. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. If the ALJ concludes that the claimant is not engaged in substantial gainful employment and suffers from a severe impairment, the ALJ examines whether the claimant's impairment meets or equals the criteria of those listed in Appendix 1 of Subpart P of Regulation No. 4. If the impairment does, and has continued for the required duration, the claimant is disabled. If not, analysis proceeds and the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 CFR §404.1520(e), (f). If the claimant's RFC permits him to perform relevant jobs he has done in the past, he is not disabled. If not, analysis proceeds to the final step, and the burden shifts to the Commissioner to show that the claimant is not disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986)). *See also* 20 CFR §404.1560(c).

The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir. 1998) (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997)). Still, "it is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

Here, the ALJ found that the plaintiff had severe impairments consisting of headaches, right shoulder arthrosis (osteoarthritis, degenerative joint disease), and asthma, which did not meet or equal a listed impairment. The ALJ determined that plaintiff retained the RFC to perform light work, except that plaintiff was limited to occasional overhead reaching, must avoid exposure to respiratory irritants, and because of the pain posed by his chronic headaches, could perform only simple tasks. In light of this RFC, the ALJ determined that plaintiff was capable of performing his past relevant work as a small products assembler.

Initially, plaintiff argues that the ALJ erred by failing to meaningfully discuss or consider plaintiff's allegation that his headaches significantly impacted his ability to concentrate. Plaintiff

points to the opinion of consulting internist Dr. Karl Eurenius, who specifically noted that plaintiff "is a very believable historian," found plaintiff's complaints of pain to be credible, and concluded that plaintiff is "limited in concentration due to constant, chronic headaches which he believes [are] impeding his ability to work." (Tr. 327). Other than that reference, there is no evidence of record that assesses plaintiff's ability to concentrate, let alone rebuts plaintiff's consistent testimony that his headaches would prevent him from concentrating at work. Plaintiff contends that because Dr. Eurenius did not specifically describe the degree of limitation that plaintiff's headaches would cause, and because there is no other evidence of record which quantifies the limiting effect of plaintiff's headache pain, the ALJ should have, at the very least, solicited additional evidence to further develop the record and substantiate his RFC findings with regard to plaintiff's ability to concentrate. Plaintiff also argues that the ALJ failed in his duty to develop the record because he did not obtain any opinions from plaintiff's treating physicians.

Initially, although the ALJ has a duty to request statements from a claimant's treating medical sources (which the record establishes that the ALJ *did* request here, Tr. 323, 331, even if that request was not satisfied), the lack of an RFC assessment from a claimant's treating physician does not, by itself, render the record incomplete, so long as the record has no obvious gaps and otherwise contains sufficient treatment records and other statements on which the ALJ can rely. *See e.g.*, *Ajibose v. Colvin*, 2016 U.S. Dist. LEXIS 136685 (S.D.N.Y. 2016) (lack of a treating physician's opinion does not render the record incomplete, where the record is otherwise sufficiently "robust"). In this case, however, the record was not sufficiently comprehensive with respect to the effect of plaintiff's headaches on his ability to attend and concentrate on work to account for the lack of clear opinions by treating or examining sources. As such, the ALJ's

finding that plaintiff's difficulties in concentration could be adequately accommodated by a limitation to "simple" tasks was not supported by substantial evidence.

The evidence of record with respect to plaintiff's complaints of severe headache pain and inability to concentrate consists solely of plaintiff's treatment records, and Dr. Eurenius's opinion that plaintiff's ability to concentrate is "limited," which fails to specify the duration, frequency or extent of such limitations. Plaintiff's treatment records do not quantify his difficulties with concentration at all, although they do tell a consistent story of complaints of severe, ongoing and at times incapacitating headache pain, which plaintiff related to every physician with whom he treated in and after November 2011, and for which plaintiff sought multiple avenues of assessment and treatment, with no apparent success.[1]

Given that plaintiff's headache pain and claimed inability to focus were a significant part of the alleged basis for his disability claim, the fact that the record did not contain any specific

---

[1] *See e.g.*, Tr. 15 (July 10, 2014, plaintiff's internist Dr. Paul Whitehead notes "headaches that occur on a daily basis… [plaintiff] has been worked up extensively without an etiology being determined"); Tr. 288 (January 11, 2012, plaintiff presents to otolaryngologist Dr. Michael Decicco with "significant" headache, 50% improved but persistent, ENT issues ruled out, neurological consultation recommended); Tr. 291, 351 (January 19, 2012 CT scan of plaintiff's sinuses shows chronic sinusitis); Tr. 293 (January 24, 2012, plaintiff presents to neurologist Dr. William J. Kingston for evaluation due to ongoing headaches, originally 10/10 in severity but 3/10 today); Tr. 299 (February 7, 2012, plaintiff presents to chiropractor Dr. Michael Young, rating tension headache pain at 10/10 and neck pain a 4/10); Tr. 300 (February 9, 2012, plaintiff presents to Dr. Young with 5/10 headache pain and 4/10 neck pain, reporting that headaches are intermittent); Tr. 301 (February 14, 2012, plaintiff visits Dr. Young and reports headache pain as 4 or 5/10 and neck/back pain at 4/10, but notes that his headache has settled down after worsening over the previous weekend); Tr. 302 (February 17, 2012, plaintiff presents to Dr. Young with headache pain of 5/10 and neck pain of 4/10); Tr. 308-09, 347-48 (March 12, 2012, plaintiff presents to neurologist Dr. Philip Vitticore complaining of continued headache pain of varying strength, 2-3/10 today and 7/10 the previous day, causing difficulty sleeping, and non-responsive to over-the-counter medications, hydrocodone, oxycodone, cyclobenzaprine, and tramadol: plaintiff reports that he has seen his primary care physician, an otolaryngologist, a chiropractor, an eye doctor, a pain management specialist, and a neurologist, none of whom have been able to help him); Tr. 317 (December 23, 2011, plaintiff presents to primary care physician Dr. Cindy Teerlinck, reporting headache pain that started at 10/10 and is now 4/10, but tends to be worse at the end of the day); Tr. 319 (January 16, 2012, plaintiff complains to Dr. Teerlinck of ongoing headaches . . . He says "it is killing me" [and is] frustrated as it is not going away and "[n]othering is touching it"); Tr. 321 (April 6, 2012, plaintiff returns to Dr. Teerlinck "to discuss headaches . . . daily, it is worse some days than others . . . his lowest headache rating on pain scale was 3/10, the highest has been 8/10 . . . can't sleep at times b/c of the pain . . . patient quite frustrated, he has seen ophthalmology and [otolaryngologist] and to neurologist"); Tr. 359 (June 19, 2012, plaintiff presents to chiropractor Dr. Jennifer Barnes with complaint of headache and back pain together rated 7/10); Tr. 360 (July 24, 2012, plaintiff reports continued headache and back pain rated at 7/10 to Dr. Barnes).

assessment of the impact of his pain on his ability to work, in quantifiable terms, presented an "obvious gap." *See generally Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel").

It is clear from the ALJ's colloquy with the vocational expert at plaintiff's hearing that if plaintiff's exertional RFC is as the ALJ already determined, but with pain disrupting his attendance and concentration for about 20% of the time, there would be no jobs in the national economy that plaintiff could perform.  (Tr. 82).  Because the record lacked sufficient evidence (indeed, lacked any evidence at all) by which the ALJ could have made a finding as to the percentage of time plaintiff's pain would cause him to unable to attend or concentrate on his work, the ALJ's implicit finding – that plaintiff's pain was nothing that a limitation to "simple" tasks couldn't accommodate – appears to have been wholly conjectural.  The Court is aware that "there are numerous cases holding that when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, limiting a claimant to only unskilled work sufficiently accounts for those limitations." *See generally Smith v. Colvin,* 2016 U.S. Dist. LEXIS 44748 at *11-*12 (D. Conn. 2016) (collecting cases and noting that) *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 37578 (D. Conn. 2016); *Boyd v. Colvin*, 2016 U.S. Dist. LEXIS 26882 at *20 (N.D.N.Y. 2016) (same).  Here, however, there is no evidence of record establishing that the plaintiff can engage in "simple, routine tasks" despite the limitations in concentration caused by his pain, and accordingly, the ALJ's RFC determination was erroneous.

Because the record in this case contains obvious gaps with respect to the effect of plaintiff's persistent and documented headache pain on his ability to work – and specifically, his

ability to attend and concentrate – remand is warranted. *See Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996).

## CONCLUSION

For the forgoing reasons, I find that the ALJ's decision was not supported by substantial evidence, and that remand for further proceedings is appropriate. The plaintiff's motion for judgment on the pleadings (Dkt. #9) is granted, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #12) is denied. The Commissioner's decision is reversed, and the matter is remanded for further proceedings, including but not limited to the obtainment of medical evidence and treating and/or consulting source opinions concerning the manner and extent to which plaintiff's ability to concentrate is affected by his headache pain.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
February 10, 2017